IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR 11-0043-TUC-CKJ(HCE) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Juan Carlos Garcia-Rivas, ) | |
| Defendant. ) | |
| ———————————————— ) | |

Pending before the Court is Defendant's Motion to Suppress (Doc. 28).[1] The Government filed a response to Defendant's Motion to Suppress. (Doc. 41). Defendant's Motion came on for hearing on April 4, 2011. Customs and Border Protection Officers (hereinafter "CBPO") Thomas Falcon (hereinafter "Falcon at p. _"), Kameo Yenna (hereinafter "Yenna at p. _"), and Alma Flores (hereinafter "Flores at p. _") testified on behalf of the Government. Transcript of the April 4, 2011 evidentiary hearing was ordered by the Magistrate Judge, filed on April 18, 2011, and is forwarded to the District Court for review. Admitted into evidence were: (1) Government Exhibits 1 through 8: Pictures of

---

[1]Defendant's Response to Government's Notice of Confessions, Admissions and Statements was converted to a Motion to Suppress by order of the District Court. (Doc. 37)

1    Douglas, Arizona Port of Entry; (2) Government Exhibit 9: I-214 *Miranda* warnings form;

2    (3) Government Exhibit 10: CBPO Falcon Report dated December 11, 2010; (4) Government

3    Exhibit 10: I-860 Sworn Statement by Defendant; (5) Government Exhibit 12: *Miranda*

4    Rights in English; (6) Defendant Exhibit 21: I-826 Notification of Rights and Solicitation for

5    Resolution form; and (7) Defendant Exhibit 23: Consular Notification form.

6        After consideration of Defendant's Motion, the Government's Response, testimony,

7    exhibits, and argument of respective counsel, the Magistrate Judge recommends that the

8    District Court deny Defendant's Motion to Suppress (Doc. 28).

9    **I. PROCEDURAL AND FACTUAL BACKGROUND**

10       **A.    Indictment**

11       Defendant is charged with, on or about December 11, 2010, at or near Douglas, in the

12   District of Arizona, being an alien who entered and was found in the United States of

13   America after having been denied admission, excluded, deported, and removed therefrom at

14   or near El Paso, Texas on or about May 8, 2010, and did not obtain the express consent of

15   the Attorney General or the Secretary of the Department of Homeland Security to reapply

16   for  admission thereto, in violation of 8 U.S.C. §1326, enhanced by 8 U.S.C. §1326(b)(1).

17       **B.    Facts**

18       It is alleged that at the Douglas, Arizona Port of Entry on December 11, 2010, CBPO

19   Falcon saw Defendant walking southbound towards the Republic of Mexico. (Falcon at pp.

20   12, 21). CBPO Falcon approached Defendant and received negative declarations from

21   Defendant regarding having weapons, ammunition or currency to declare. (*Id.* at pp. 10, 21).

22   Defendant appeared nervous and CBPO Falcon asked Defendant for picture identification.

23   (*Id.* at pp. 27, 35). Defendant stated he had none.  (*Id.* at pp. 27-28; Government Exhibit 10).

24   When asked whether he was in the United States illegally, Defendant stated that he was in

25   the United States illegally.  (*Id.* at pp. 27-29; Government Exhibit 10). When a person is

26   acting nervous as Defendant was, it is CBPO Falcon's practice to obtain picture identification

27   in order to determine if that person is a wanted person, if he is going to be a threat to CBPO

28   Falcon, or if he is going to run into the Republic of Mexico. (Falcon at p. 35). The underlying

1  basis for CBPO Falcon having suspicions about an out-bound individual without picture
2  identification is that person may have brought illegal aliens or drugs into the United States
3  and does not want to be identified. (*Id.* at p. 36).  Defendant was handcuffed and placed in
4  a cell at the Douglas, Arizona Port of Entry. (*Id.* at pp. 29, 38). CBPO Falcon did not advise
5  Defendant of rights under *Miranda* nor was Defendant asked questions. (*Id.* at p. 39).

6       Thereafter, CBPO Kameo Yenna arrived at the Douglas, Arizona Port of Entry and
7  took custody of Defendant to take him to the Border Patrol Station. (Yenna at p. 41). During
8  the 15-minute ride to the Border Patrol Station, she did not ask questions of Defendant. (*Id.*
9  at p. 45). Once at the Border Patrol Station, CBPOs Yenna and Alma Flores placed their
10 respective firearms in lockers before advising Defendant of his rights under *Miranda* in
11 Spanish at 2:46 p.m., utilizing the English/Spanish Form I-214. (*Id.* at pp. 45, 47, 48, 49, 81-
12 82). CBPO Yenna and CBPO Flores both witnessed and signed the I-214 form. (*Id.* at pp. 48-
13 49). Defendant signed the Form I-214 twice: once acknowledging that he was advised of his
14 rights and again indicating that he did not wish to have an attorney during questioning. (*Id.*
15 at p. 51; Government Exhibit 9). Defendant had no questions for CBPO Yenna. (Yenna at
16 p. 49).

17      Defendant was advised at 2:50 p.m. of his right to speak with the Mexican consulate.
18 (*Id.* at pp. 81-82; Defendant's Exhibit 23). Defendant asked to speak to the Mexican
19 consulate. (Yenna at p. 50). After speaking with the Mexican consulate, Defendant was
20 interviewed and gave a statement. (*Id.* at pp. 50, 52-53). Defendant was calm during the
21 interview. (*Id.* at p. 52). After arriving at the Border Patrol Station, CBPO Yenna was of calm
22 demeanor when questioning Defendant.(*Id.* at p. 46-47). CBPO Flores was serious in her
23 demeanor, and did not yell at Defendant in anger. (Flores at pp. 97-98). Neither CBPO
24 threatened Defendant nor did they make any promises. (Yenna at pp. 51-52; Flores at p. 101).

25      Defendant's answers to questions were typed in English. (*Id.* at p. 54). Defendant was
26 given an opportunity to review and sign each page of the statement. (*Id.*). CBPO Flores
27 witnessed CBPO Yenna read each question on the statement and assisted in translating it into
28 Spanish. (*Id.* at p. 83; Flores at p. 104). Defendant's answers given in Spanish to questions

1   asked in Spanish were written down in English contemporaneous to when given, not

2   afterwards. (*Id.* at p. 111). This process took an hour to an hour and one-half. (*Id.* at pp. 104-

3   105).

4       Thereafter, Defendant was read Form I-826, Notification of Administrative Rights.

5   (Yenna at p. 62; Defendant's Exhibit 21). The Notification of Administrative rights advises

6   a subject of his right to have a hearing before an immigration court to determine if he will

7   be allowed to remain in the United States and that the individual advising him of this right

8   can provide a list of attorneys who can represent him before the immigration court at little

9   or no cost. (Defendant's Exhibit 21).

10  **II. LAW**

11      **A.    Analysis**

12      Customs officials are authorized to inspect people or goods leaving the United States.

13  *See* 22 U.S.C. §401(a)(authorized persons may seize and detain arms, munitions of war, and

14  other articles intended for unlawful export and may seize any vessel, vehicle, or aircraft

15  containing same); 31 U.S.C. §5317(b)(customs officials may search any person, vehicle, or

16  package entering or departing the United States for currency violations). CBPO Falcon was

17  carrying out his statutorily authorized duties when he stopped and questioned out-bound

18  Defendant regarding weapons, ammunition, or currency. While receiving negative responses

19  from Defendant, CBPO Falcon noted Defendant's increasing nervousness, prompting him

20  to ask Defendant for picture identification. After Defendant stated that he had no picture

21  identification, CBPO Falcon asked Defendant if he was in the United States illegally, to

22  which Defendant responded that he was in the United States illegally. Questions posed to

23  Defendant do not rise to interrogation requiring  advisement of his rights under *Miranda*.

24  *United States v. Galindo-Gallegos*, 244 F.3d 728, 730-32 (9th Cir.),  *amended by* 255 F.3d

25  1154 (9th Cir. 2001), (*Miranda* warnings not required during Border Patrol agent's

26  questioning about immigration status because questioning was brief and in public), Further

27  questioning of Defendant ceased and he was placed into custody.

28

1

### 1.    *Miranda* Advisement

2    CBPOs Yenna and Flores thereafter placed Defendant in a transport van to take him

3    to the Border Patrol Station. En route he was not questioned by either CBPO. Once at the

4    Border Patrol Station, he was advised of his right to an attorney at no cost to him. He

5    acknowledged being advised of this right and that he did not want to talk to an attorney. After

6    Defendant was advised that he had the right to speak with the Mexican consulate, Defendant

7    exercised this right.

8    After speaking with the Mexican consulate, Defendant agreed to be interviewed by

9    CBPOs Yenna and Flores. There is nothing before the Court that Defendant did not

10   understand his right to remain silent, his right to an attorney at no cost to him, and his right

11   to terminate questioning at any time. Defendant was fully cognizant that he waived his right

12   to an attorney and the consequences of doing so. *Moran v. Burbine*, 475 U.S. 412, 421

13   (1986).

14   A court cannot presume a waiver of one's rights from a defendant's silence or

15   subsequent confession. *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). Herein, Defendant's

16   waiver was express: after he was read the Form I-214 in Spanish regarding his rights; he

17   acknowledged, by signing, that he understood his rights and  that he did not wish to speak

18   to an attorney. He asked no questions of either CBPO Yenna or Flores. He signed each page

19   of his 3-page statement acknowledging his answers. There is no evidence before this Court

20   that Defendant labored under difficult physical and mental conditions, *Mincey v. Arizona*,

21   437 U.S. 385, 399-400 (1978) (waiver invalid because hospitalized defendant was connected

22   to at least 6 tubes, repeatedly requested counsel, complained of excruciating pain, and

23   nodded off during 4-hour interrogation); or that Defendant had drug or alcohol problems,

24   *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 855-56 (9th Cir. 2005)(waiver valid

25   despite defendant's statements that he was going through heroin withdrawal because facts

26   indicated waiver was voluntarily made); or that there were language barriers. *United States*

27   *v. Shi*, 525 F.3d 709, 728-29 (9th Cir. 2008), *cert. denied,* __ U.S. __, 129 S.Ct. 324

28   (2008)(waiver by Chinese national valid because language specialist testified that defendant

had 90-95% understanding during interview, rights were provided defendant in Mandarin, and defendant told officer he understood form); *United States v. Garibay*, 143 F.3d 534, 537-38 (9th Cir. 1998)(waiver by Spanish-speaking defendant invalid because he understood only a few English words, suffered from mental handicap, and officer never presented option of conducting interview in Spanish).

### 2.    Involuntariness

There is no evidence before this Court that Defendant's statement is involuntary. CBPOs Yenna and Flores did not pressure Defendant to talk. There being the absence of coercion or threats, the question of Defendant's capacity to resist that pressure is non-existent. *See e.g., Mincey*, 437 U.S. at 399-401 (confession involuntary because continued police interrogation of hospitalized suspect overwhelmed defendant's free will); *Davis v. North Carolina*, 384 U.S. 737, 752 (1966)(confession involuntary because police repeatedly interrogated jailed suspect held incommunicado over 16-day period).

CBPOs Yenna and Flores were unarmed at the time that Defendant was interviewed; they were both calm; no yelling in anger occurred; no threats or promises were made. There was no atmosphere of coercion.

## III. CONCLUSION

Defendant's statements to CBPO Falcon were not made while in custody and are admissible. Once in custody, Defendant's statements to CBPOs Yenna and Flores were given after Defendant was advised of his rights pursuant to *Miranda* and he waived same. Furthermore, such statements were given freely and voluntarily and were not the result of governmental overreaching.

## IV. RECOMMENDATION

For the forgoing reasons, the Magistrate Judge recommends that the District Court deny Defendant's Motion to Suppress (Doc. 28).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections. In light of Defendant's trial date of May 17, 2011, the parties may serve and file written objections within **eight (8) calendar**

1    **days** after being served a copy of this Report and Recommendation. If objections are filed,

2    parties should use the following case number: **CR 11-0043-TUC-CKJ**

3          Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver

4    of the right of review.

5          DATED this 2nd day of May, 2011.

6

7

8    _____

                 Héctor C. Estrada

9             United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28